**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                  **Case No. 3:12cr70-LC-EMT**
                                                         **3:14cv55-LC-EMT**

**LONETT ROCHELL WILLIAMS**
_____/

<u>**UNITED STATES' RESPONSE IN OPPOSITION TO THE DEFENDANT'S**</u>
<u>**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**</u>
<u>**PURSUANT TO 28 U.S.C. § 2255 (Doc. 100)**</u>

The United States of America, by and through the undersigned Assistant United States Attorney, pursuant to Title 28, United States Code, Section 2255, the rules governing Section 2255 proceedings, and this Court's Order, hereby responds in opposition to the defendant's Motion to Vacate, Set Aside, or Correct Sentence. (Doc. 100). For the reasons stated below, the government respectfully requests that the defendant's motion be denied without a hearing.

**I.      STATEMENT OF THE CASE AND FACTS**

**a.      Course of Proceedings**

On or about September 27, 2011, an Indictment was returned against Raysean K. Richardson in case number 3:11cr70/MCR, charging: Count One – Conspiracy to Commit Mail Fraud, Count Two – Mail Fraud, and Count Three – Conspiracy to Commit

Money Laundering.[1]  (3:11cr70/MCR, Doc. 3).  A jury trial was held in Richardson's case beginning on or about June 4, 2012.  (3:11cr70/MCR, Doc. 123).  On or about September 6, 2012, Richardson's attorney Mark Menser notified Chief United States District Court Judge M. Casey Rodgers, that Richardson's mother Lonett Rochelle Williams was going to testify on behalf of Richardson.[2]  (Doc. 62-2, pg. 3).  As a result of this notification, the government notified Judge Rodgers that Lonett Rochelle Williams was a target of a criminal investigation to ensure Williams would be advised of her rights outside the jury's presence.  (Doc. 62-2, pg. 3).  Due to Williams' status as a target of the criminal investigation, Judge Rodgers made arrangements for defense attorney Joseph Hammons to be present in court so Williams could consult counsel prior to testifying. (Doc. 62-2, pgs. 4-5).  During a conference outside the jury's presence, a brief discussion was held between Judge Rodgers and Williams, in which the Court asked if Williams would like to speak with an attorney.  (Doc. 62-2, pgs. 4-5).  Williams accepted the court's offer.[3]  (Doc. 62-2, pg. 5).

Following consultation, Mr. Hammons and Lonett Rochelle Williams returned to court at approximately 10:35 am, and a discussion was held concerning what matters Williams would be questioned about by the government during cross-examination.  (Doc. 62-2, pgs. 5-18).  Thereafter, Mr. Hammons and Williams left court at approximately 10:53 am, to have further discussions. (Doc. 62-2, pg. 18).  Later the same day at

---

[1]  A copy of Raysean Richardson's Indictment is contained in Lonett Rochelle Williams' docket because it was attached to the government's response to the draft pre-sentence report in Williams' case. (Doc. 62-3).
[2]  A copy of the transcript of the conferences held during the Raysean Richardson trial are contained in Lonett Rochelle Williams' docket because it was attached to the government's response to the draft pre-sentence report in Williams' case.  (Doc. 62-2).
[3]  The conference concluded at approximately 8:41 am.  (Doc. 62-2, pg. 2).

approximately 1:33 pm, Mr. Hammons and the defendant returned and Williams was addressed on the record concerning her desire to testify even though she was a target of the criminal investigation. (Doc. 62-2, pgs. 18- 25). Thereafter, the defendant was called as a witness by her son's attorney.[4] (Doc. 62-1; 3:11cr70, Doc. 123, pg. 5). Following the conclusion of Williams' testimony on September 7, 2012, the defendant was arrested on a criminal complaint for her conduct in the mortgage fraud scheme. (Docs. 1-7). After the defendant's first appearance on the complaint, defense attorney Shelley Guy Reynolds was appointed to represent the defendant. (Docs. 11-15).

On or about September 26, 2012, the Grand Jury returned an eight count Indictment against the defendant charging: Count One - Conspiracy to Commit Fraud, Counts Two through Seven – Mail Fraud, and Count Eight – Conspiracy to Commit Money Laundering. (Doc. 18). Following her indictment, the defendant was arraigned and trial was scheduled for November 5, 2012. (Docs. 25 & 27). Thereafter, Ms. Reynolds filed the following pre-trial motions: a Motion to Suppress the defendant's trial testimony in her son's case, a Motion to Suppress Search, and a Motion to Dismiss the Indictment. (Doc. 36, 39 & 40). The government filed a response to the defendant's Motion to Suppress the defendant's trial testimony, and a hearing was scheduled for October 29, 2012. (Docs. 43 & 45).

At or near the time of filing the aforementioned motions, defense counsel also filed a Motion to Continue the trial, and a hearing was scheduled for October 23, 2012.

---

[4]   A copy of the transcript of the defendant's testimony during the Raysean Richardson trial is contained in Lonett Rochelle Williams' docket because it was attached to the government's response to the draft pre-sentence report in Williams' case. (Doc. 62-1). Further, the transcript was included as Doc. 10 in the defendant's case.

(Docs. 38, 47).  Prior to the hearings on the defendant's Motion to Continue and other pending motions, the District Court was asked to schedule a change of plea hearing in the defendant's case.  (Doc. 48).  The change of plea was held on October 24, 2012.  (Docs. 49 & 50).

At the change of plea hearing, the defendant entered a guilty plea to all counts. (Docs. 50-52).  As a part of the defendant's change of plea, the defendant signed a Factual Basis for a Guilty Plea.[5]  (Doc. 51).  As a part of the defendant's written Plea Agreement, the defendant agreed to the following in a section of the Plea Agreement titled "Victim Restitution,"

> The defendant agrees to make full restitution to the victims as determined by the Court.  The defendant agrees that the amount of restitution may include losses resulting from related conduct for which the defendant was not convicted, if the loss flowed directly from the relevant conduct of which the defendant was a part.

(Doc 52, pg. 40).  During the course of the defendant's change of plea, a Federal Rules of Criminal Procedure, Rule 11 inquiry was held by Senior United States District Judge Lacey A. Collier.   (Doc. 106).   The defendant's then pending motions seeking suppression, dismissal and a continuance were addressed at the conclusion of the change of plea hearing, and defense counsel indicated that the defendant was waiving her right to have those motions heard by the Court.  (Doc. 106, pg. 16).  Thereafter, sentencing was scheduled for January 8, 2013.  (Doc. 54).

On or about December 4, 2012, a draft pre-sentence report ("PSR") was provided to the parties.  (Doc. 59).  The government filed two responses to the draft PSR.  (Docs.

---

[5]   The facts contained in the Factual Basis for Guilty Plea are included below.

62 & 63).  On December 20, 2012, a final PSR was provided to the parties.  (Doc. 65).

On December 28, 2012, defense counsel filed an amended motion for additional time to

file objections to the PSR, and sentencing was rescheduled for January 22, 2013.[6]  (Docs.

68 & 72).  On January 15, 2013, Ms. Reynolds filed a response to the PSR raising eleven

objections to the PSR, and thereafter, a second final PSR was provided to the parties.

(Docs. 74 & 82).  The government then filed a reply to the defendant's response.  (Doc.

83).  On January 21, 2012, defense counsel filed a Motion to Continue the sentencing

hearing and a seventeen page Sentencing Memorandum.  (Docs. 84 & 85).  On January

22, 2013, defense counsel argued the defendant's Motion to Continue, and the Court

indicated it was inclined to continue the sentencing until the following day, after taking

the testimony of Robert Schoppe, a witness the government had flown to Pensacola for

the defendant's sentencing.  (Docs. 88 & 107).  Thereafter, testimony was taken of

Special Agent Philip Greeson and Robert Schoppe, and the remainder of the sentencing

was continued to January 23, 2013.  (Docs. 88 & 107).

On January 23, 2013, the parties returned and the defendant's sentencing hearing

was held.  (Docs. 90 & 108).  During the course of the sentencing hearing, testimony was

taken and the defendant's objections were addressed by the Court.  (Docs. 90 & 108).

Thereafter, the defendant was sentenced to 120 months imprisonment as to Counts One

through Eight to run concurrently; three years' supervised release on each count to run

---

[6]   In the motion, defense counsel cited receipt of binders containing loss/restitution information from the government.  (Doc. 68).  The government filed a response to the defendant's motion for extension of time outlining the chronology that led to the binder's receipt.  (Doc. 69).

concurrently; and, an $800 special monetary assessment.[7]  (Docs. 92 & 108, pgs. 96-100).  At the conclusion of the sentencing hearing, the Court reserved jurisdiction on the issue of restitution and directed the parties to address the issue of restitution within sixty days.  (Doc. 108, pg. 98; Doc. 92, pg. 6).  Following imposition of sentence, the Court notified the defendant that she had fourteen days in which to appeal the sentence.  (Doc. 108, pg. 99).  A written judgment imposing sentence was entered on January 28, 2013. (Doc. 92).  The defendant did not file a notice of appeal.

On or about February 19, 2013, defense counsel filed a Restitution Memorandum with the Court.  (Doc. 95).  In the memorandum, defense counsel stated the following:

> Counsel for Defendant, Lonett Rochell Williams, has no objection to the list of victims and restitution amounts from the Presentence Report (Doc. # 82, ¶ 112) which is attached hereto.  The Assistant United States Attorney has agreed to remove the two objectionable victims, Ramona Jones and Fannie May from that list, and the remaining list is in accordance with the applicable law.  Therefore, no evidentiary hearing is requested.
>
> Counsel has consulted with Defendant regarding the restitution issues on several occasions and specifically on January 24, 2013 and February 5, 2013.  Additionally, Counsel has provided Defendant with additional copies of the victim requests for restitution, the Government charts showing the breakdown of all relevant transactions, and other relevant discovery.  Counsel has asked that Defendant respond in writing with specific objections as to each restitution request but no such objections have been provided.
>
> Defendant has verbally informed Counsel that she wishes to agree only to restitution on loans where she or her son was the borrower; however Defendant has not provided Counsel with any valid legal basis for such objections.

---

[7]  Because the defendant's § 2255 motion concerns alleged ineffectiveness by defense counsel concerning sentencing issues, a section is included below concerning the defendant's sentencing and the objections heard by the Court on January 23, 2013.

> Counsel has informed Defendant in writing that there is no legal basis for objection to the attached list of victims and restitution.  As an officer of the court, Counsel will not file objections without merit and Defendant has been made aware of this limitation.

(Doc. 95).  A copy of the restitution section (paragraph 112) of the defendant's second final PSR was attached to the Restitution Memorandum.  (Doc. 95-1).  As a result of the aforementioned, on or about March 12, 2013, the government filed a Motion to Amend Judgment in a Criminal Case, and asked the Court to amend the judgment adding restitution in the amount of $13,817,163.17 to the defendant's sentence.  (Doc. 96). Thereafter, an Amended Judgment was entered by the Court which added restitution, but all other aspects of the Court's judgment remained in full force and effect.  (Doc. 97).

On or about February 6, 2014, the defendant filed a motion to vacate, set aside, or correct sentence pursuant to Title 28, United States Code, Section 2255.  (Doc. 100).  The government's response is due on June 12, 2014.

### b.    Statement of Facts

1.       Beginning on or about January 1, 2007, and continuing through on or about June 1, 2009, defendant, Steven Imes, III, and others entered into contracts to purchase residences located in Florida and elsewhere. Thereafter, loan applications were submitted to financial institutions and mortgage lenders in order to fund the purchases.

2.       In the loan applications for their  purchases of the residences, defendant, Steven Imes, III, and other borrowers made and caused to be made false statements to the lenders, which included, but were not limited to, the following: providing false names and social security numbers for the individual actually applying for the loans; overstating the borrower's income and assets; falsely stating that the earnest  money deposit or cash to close was not borrowed; at times, falsely stating that the residences were going to be used as a primary residence by the borrower; and, at times, failing to disclose outstanding mortgage loans obtained by the borrower.

3.      In support of the loans sought, defendant, Steven Imes, III, and other borrowers submitted and caused to be submitted fraudulent supporting documentation to the lenders, which included, but was not limited to, the following: false pay-stubs; false W-2s; false verifications of employment; false verifications of rent; and false documentation concerning the borrower's credit.

4.      Thereafter, defendant and others, transferred and caused to be transferred, to either the title agent handling the closing or a bank account in which the borrower had access, money required from the borrower to close on the purchase of the property for the borrower to transfer the money to the respective title agent.

5.      Following closing, proceeds of the loans were transferred into bank accounts controlled by defendant and others, and into bank accounts titled in the names of entities in which defendant and others were associated. Thereafter, defendant and others transferred, or caused to be transferred, a portion of the loan proceeds to bank accounts held by the borrower.

6.      As part of the closing process, defendant and others caused mortgage documents to be filed and recorded with the Clerk of Court in the respective counties where the properties were located within the Northern District of Florida. The mortgages were received by the Clerks of Court via private or commercial carrier. Once the mortgages were filed by the Clerks of Court, the original documents were returned via the United States Postal Service to the settlement agents.

7.      Following the closings, proceeds from the fraudulently obtained loans were transferred into bank accounts titled in the names of entities in which defendant was associated.  During the tax year of 2007, RMT Associates, Inc., which defendant controlled, received proceeds from the fraudulently obtained loans; however, a Corporate Income Tax Return in the name of RMT Associates reflecting those loan proceeds was not filed for the tax year of 2007.

8.      Evidence obtained from a search of A.A.'s residence revealed that on or about October 18, 2007, defendant sent A.A. an email in which defendant requested A.A. to pose as defendant for the purchase of 7282 Jacobs Trail. In the email, defendant provided A.A. details of the false employment information that was used on the fraudulent mortgage application for the purchase of 7282 Jacobs Trail in the name of defendant.

9.      On or about October 24, 2007, defendant, using the name of Rochelle Williams, caused to be submitted a loan application to Wells Fargo Bank, N.A. for a loan in the amount of $598,500 to fund the purchase of 7282 Jacobs Trail.  The loan application and other loan documents falsely identified Rochell Williams with a social security number ending in 6934 and a date of birth of March 5, 1965. According to the Social Security Administration, this social security number is assigned to E.E.B. California Department of Motor Vehicles determined that the California Driver's License in the name of Rochell Williams, which was provided to the settlement agent for the closing of 7282 Jacobs Trail, was invalid.  In addition, the date of birth for defendant is March 5, 1965.  According to the loan application, Rochell Wiliams was employed at RMT Associates, Inc.

10.      As part of the mortgage application process for the purchase of 7282 Jacobs Trail in the name of Rochell Williams, a credit card charge form showed that a credit report and an appraisal fee was paid by defendant.   In addition, credit cards held in the name of Rochell Williams were paid from bank accounts controlled by defendant.

11.      On or about December 20, 2007, defendant, using the name of Rochell Williams entered into a Rental Management Agreement with Gulf Properties Realty, Inc. to allow for the property management and rental of 7282 Jacobs Trail.

12.      On or about September 6, 2012, defendant appeared as a witness for the defense in a trial involving Raysean Richardson, defendant's son.  Defendant admitted to submitting false statements and false documents to the lenders for Richardson to obtain loans.

(Doc. 51).

c.      **Sentencing Hearing**

According to the second final PSR, the defendant's United States Sentencing Guidelines ("U.S.S.G.") were calculated in the following manner:

| | | |
|---|---|---|
| ¶ 48 | Base Off. Level - § 2B1.1(a)(1)(B) | 7 |
| | Specific Off. Char. - § 2B1.1(b)(1)(K), >$7M, but >$20M in loss | +20 |
| | Specific Off. Char. - § 2B1.1(b)(2)(A), 10 or more victims | +2 |
| | Specific Off. Char. - § 2B1.1(b)(10)(C), Sophisticated means | +2 |
| | Specific Off. Char. - § 2B1.1(b)(15)(A), >$1M in Gross receipts from a financial institution | +2 |
| ¶ 49 | Specific. Off. Char. - § 2S1.1(b)(2)(B), 18 U.S.C. 1956 conviction | +2 |
| ¶ 51 | Adjustment for Role in Offense, § 3B1.1(a), Organizer or leader | +4 |
| ¶ 52 | Adjustment for Obstruction of Justice, § 3C1.1[8] | +2 |
| ¶ 54 | Adjustment for Acceptance of Responsibility, § 3E1.1(b) | -3 |
| ¶ 57 | Total Offense Level | 38 |

(Doc. 82).  As a result of the aforementioned, with a criminal history category of I, the defendant's advisory U.S.S.G. range was 235 to 293 months imprisonment.  (Doc. 82, ¶ 101).

As referenced above, prior to the defendant's sentencing hearing, defense counsel filed a response to the PSR raising eleven objections to the PSR and a seventeen page sentencing memorandum.  (Docs. 74 & 85).  The eleven objections contained in defense counsel's response to the PSR included the following"

A.    Objection to **loss amount**.  The defendant claims that the loans obtained on the 31 properties not included as substantive counts of the defendant's Indictment should not be considered relevant conduct because

---

[8]   An adjustment for obstruction of justice was not included in the draft PSR.  (Doc. 59).  The obstruction of justice enhancement was added after the government filed its first response to the draft PSR, and identified the defendant's perjury and obstructive conduct in her son's trial as the basis for inclusion of the obstruction enhancement.  (Doc. 62).

they are not "tied to the 'common scheme or plan to defraud'" (Doc. 74, pg. 2);

B.      Objection to the alleged **failure to identify victims**.   The defendant claims that the government "fail[ed] to identify any victim as to" items "10-18, 21, 23, 35, 36, and 37" (Doc. 74, pg. 3 - ¶ 1);

C.      Objection to the **identification of the FDIC as a victim** (Doc. 74, pg. 3 - ¶ 2);[9]

D.      Objection to **loss calculation**.   The defendant claims that the "'actual' loss should be offset by deducting interest, fees, and other charges" (Doc. 74, pg. 3 - ¶ 3);

E.      The defendant claims that the "government has maintained that the **property was overvalued**," and therefore the loss should not exceed the fair market value (Doc. 74, pg. 4 - ¶ 4);

F.      The defendant claims that the **losses were not foreseeable,** and therefore the defendant should not be held accountable for the actual losses incurred (Doc. 74, pg. 4 - ¶ 5-6);

G.      Objection to 2 level increase for **10 or more victims** pursuant to U.S.S.G. §2B1.1(b)(2)(A) contained in ¶ 48 of the PSR (Doc. 74, pg. 6);

---

[9]   The government's second response to the draft PSR, and the testimony of Robert Schoppe taken on January 22, 2013, addressed the inclusion of the FDIC as Receiver for WAMU as a victim.  (Doc. 63; Doc. 107, pgs. 15-39).

H.     Objection to 2 level increase for **gross receipts in excess of $1,000,000** pursuant to U.S.S.G. §2B1.1(b)(15)(A) contained in ¶ 48 of the PSR (Doc. 74, pg. 7);

I.     Objection to 4 level increase for **role in offense** pursuant to U.S.S.G. §3B1.1(a) in ¶ 51 of the PSR (Doc. 74, pg. 7);

J.     Objection to identification of $607,769.84 in restitution being owed to **Ramona Jones** in ¶ 112 of the PSR (Doc. 74, pg. 8); and,

K.     Objection to 2 level increase for **obstruction of justice** pursuant to U.S.S.G. §3C1.1 in ¶ 52 of the PSR (Doc. 74, pg. 8).

(Doc. 83). A review of the above eleven objections shows that defense counsel objected to five of the specific offense characteristics and upward adjustments included in the defendant's PSR, that is, the loss amount, the 10 or more victims adjustment, the over $1 million in gross receipts adjustment, the role in the offense adjustment, and the obstruction of justice adjustment. (Doc. 74).

After filing the above identified objections to the guideline calculation in the form of a response to the PSR, defense counsel filed a seventeen page sentencing memorandum. (Doc. 85). In defense counsel's sentencing memorandum, counsel raised three claims, which included, one – that the victim loss information procedure, found in Title 18, United States Code, Section 3663A, was not complied with by the government; two - again claiming that the losses were not foreseeable, citing the downturn in the housing market, and therefore the defendant should not be held accountable for the full amount of actual loss incurred; and, three – a downward departure or variance should be

entered by the Court.[10]  (Doc. 85).  Defense counsel further argued for a below guideline and reasonable sentence.  (Doc. 85).

During the course of the defendant's sentencing hearings, defense counsel argued and the Court took testimony and evidence on each of the defendant's objections contained in defense counsel's response to the PSR and sentencing memorandum.  (Docs. 90 & 108).  Each of the objections raised were denied by the Court.  (Docs. 90, 93 & 108).  Following testimony and argument by counsel, the Court determined that the PSR was accurate, and that the U.S.S.G. were properly calculated at 38 with a criminal history category of I.  (Doc. 108, pg. 79 & 96).  Thereafter, the Court sentenced the defendant to 120 months imprisonment which was one half of the advisory U.S.S.G. sentencing range.  (Doc. 82; Doc. 108, pg. 96-97).  In reaching this sentence, the Court announced that the Court felt that the U.S.S.G. for § 2B1.1, loss amount, does not "properly track the nature of the crime, the seriousness of the crime and that [it] has too great a reliance on the amount rather than the acts that were committed."  (Doc. 108, pg. 97).  The Court continued by stating:

> So keeping all of this in mind, I do, along with having considered Title 18, United States Code, 3553(a), as well as the advisory nature of the guidelines and how they were created in this particular crime, I do determine the sentence is reasonable, and a greater sentence is not necessary to comply with the statutorily defined purpose of sentencing.

> I do find the sentence meets the general goals of punishment and acts as a general and specific deterrent hopefully to others who might consider similar criminal conduct.

---

[10]   The government filed a response to the defendant's Sentencing Memorandum.  (Doc. 86).

(Doc. 108, pgs. 97-98).  After pronouncing its sentence, the Court stated, "And I would state for the record that this sentence would be the same regardless of any ruling that the Court made on the objections."  (Doc. 108, pg. 99).

## II.     MEMORANDUM OF LAW

### A.     Ineffective Assistance of Counsel

The defendant raises four numbered grounds in her § 2255 motion.[11]  (Doc. 100). Ineffective assistance of counsel claims are cognizable on collateral review, but the standards are strict.  The Sixth Amendment right to counsel is the right to effective assistance of counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449 (1970).  The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984).  To establish that a lawyer's performance was unconstitutionally ineffective, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *United States v. Friexas*, 332 F.3d 1314, 1319 (11th Cir. 2003); *accord Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001).

---

[11]   The defendant's first and second ground appear to both concern counsel performance at sentencing; therefore, these two grounds will be grouped together below in the government's response.  (Doc. 100, pgs. 3 & 4).  The defendant's third ground concerns the District Court's application of sentencing guideline enhancements, which the defendant did not raise on direct appeal.  (Doc. 100, pg. 4).  Therefore, this ground is barred by procedural default.  The defendant's fourth ground concerns reasonableness of the District Court's sentence, but the defendant has also couched it as an ineffectiveness of counsel claim. (Doc. 100, pgs. 4 & 16).  Because this ground was not raised on direct appeal, it too is barred, but to the extent the claim is being raised as an effectiveness of counsel claim, it will be addressed as such and should nonetheless be denied.  Each of the defendant's grounds will be addressed below.

To establish a claim for relief, the defendant must meet the two-pronged test of *Strickland v. Washington*; he/she must show that his/her counsel's representation was deficient and must also show counsel's deficient representation prejudiced him/her. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Chandler v. United States*, 218 F.3d 1305, 1312, 1315 (11th Cir. 2000) (*en banc*).  Pursuant to *Strickland*, the court may dispose of an ineffective assistance claim if the defendant fails to carry his/her burden on either of the two *Strickland* prongs.   *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.   In determining whether the first portion of the test has been met, the proper standard is "reasonably effective assistance," or whether "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88, 104 S.Ct. at 2064; *see also Weeks v. Jones*, 26 F.3d 1030, 1036 (11th Cir. 1994).  The purpose of the test is not to grade counsel's performance, but to determine whether counsel's performance was reasonable under prevailing professional norms.  *Chandler*, 218 F.3d at 1313.  It is the petitioner's burden to establish "that particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'"  *Chandler*, 218 F.3d at 1314; *quoting Burger v. Kemp*, 483 U.S. 776, 795, 107 S.Ct. 3114, 3126 (1987); *accord Gordon v. United States*, 496 F.3d 1270, 1281-81 (11th Cir. 2007); *Friexas*, 332 F.2d at 1319; *Johnson*, 256 F.3d at 1176.  "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  *Id.*; *accord Grayson v. Thompson*, 257 F.3d 1194, 1215-16 (11th Cir. 2001); *Johnson*, 256 F.3d at 1176.

Further, to prevail on an ineffective assistance claim, the defendant must meet the second prong of the *Strickland* test by affirmatively proving prejudice. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. Even if the court finds some deficiency in the performance of the defendant's counsel, the defendant is not entitled to relief on ineffective assistance grounds unless he/she can show that but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. However, for the court to focus merely on "outcome determination" is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 842-43 (1993). Therefore, to establish counsel committed prejudicial trial errors, the defendant must establish "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369, 113 S.Ct. at 842 (*quoting Strickland*, 466 U.S. at 687, 104 S.Ct. 2064).

In this case the defendant has failed to meet either, let alone both prongs of the *Strickland* test. As will be discussed below, the documents and transcripts, which are a part of the record in this case, establish defense counsel provided "reasonably effective assistance."

### B.     Procedural Default

Where a claim was not raised on direct appeal it is procedurally barred (defaulted) absent cause and prejudice. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). United States Sentencing Guidelines' errors can be litigated on direct appeal;

therefore, they are not cognizable on collateral attack. *Montemoino v. United States*, 68 F.3d 416, 417 (11th Cir. 1995). Further, sentences imposed within statutory limits are insulated from § 2255 review. *Fernandez v. United States*, 941 F.2d 1488, 1494-95 (11th Cir. 1991).

As discussed above, grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F. 3d 1225, 1232 (11th Cir. 2004) (internal citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Id.,* at 1232-33 (citations omitted).

Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless a defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Id.,* at 1234; *Bousley v. United States,* 523 U.S. 614, 623-24, 118 S.Ct. 1604, 1611-1612 (1998)(citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235.

### III.    DEFENDANT'S CLAIMS

#### A.    Defendant's Grounds One and Two of Ineffective Assistance of Counsel – Defense counsel was allegedly ineffective in her handling of the defendant's sentencing.

In her first and second grounds, the defendant appears to take a shotgun approach in alleging that defense counsel was deficient in her handling of sentencing in this case. That is, the defendant makes a number of conclusory allegations, but in the end, they all boil down to whether or not defense counsel's performance as it concerns sentencing was reasonable or not.[12]

As explained above, to establish a violation of constitutional rights by previous counsel, a defendant must demonstrate *both* that counsel's performance was below an objective and reasonable norm, and that he/she was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  And when applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his/her burden on *either* prong.  *Strickland,* 466 U.S. at 697.  Further, a defendant is obligated to provide factual support for his contentions regarding alleged deficiencies in his counsel's performance.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Stano v.*

---

[12]    In her ground number one, the defendant alleges defense counsel was deficient for "failing to adequately research the law, investigate and otherwise prepare a defense." (Doc. 100, pg. 3).  The defendant also alleges counsel failed to familiarize herself to the intricacies of the case, that counsel generally failed to investigate, challenge, and mitigate all sentencing factors, and that counsel failed to obtain a more reasonable sentence.  (Doc. 100, pgs. 3 & 8-10).  In her ground number two, the defendant claims defense counsel gave her incompetent, deficient, and careless advice regarding challenging the amount of loss and the methods in which the loss was determined that negatively affected the sentencing and restitution amount.  (Doc. 100, pgs. 3-4 & 11-15).  The defendant further alleges that counsel failed to properly launch a defense in mitigation raising "calculation of actual loss" and "extraneous loss" for sentencing purposes.  (*Id.*).

*Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74; 97 S.Ct. 1621, 1629 (1977)).

The defendant essentially claims that if her counsel had adequately researched, investigated, familiarized, and prepared for defendant's case, then she would have obtained a more reasonable sentence.   (Doc. 100, pgs. 3-4 & 8-15).   However, defendant's claims in her grounds one and two are not supported by the record and wholly fail to meet the standard required for a successful ineffective assistance claim. Notably, the defendant fails to set forth within her § 2255 motion or attached memorandum specific examples of her counsel's alleged *failures*.

A review of the defense counsel's response to the PSR, defense counsel's sentencing memorandum, and the transcripts of the sentencing hearings, directly contradict defendant's claims of ineffective assistance of counsel.   (Docs. 74, 85, 107 & 108).   As detailed above, defense counsel lodged numerous objections to the PSR, sought mitigation for the defendant, and argued diligently in her favor.   (Docs. 74, 85, 107 & 108).   However, the district court overruled defense counsel's objections.[13]   (Docs. 90 & 108).   It should be noted that even though the district court overruled defense counsel's objections, the court sentenced the defendant to one half of the U.S.S.G. imprisonment range, that is, the guideline imprisonment range was 235 to 293 months, but the court sentenced the defendant to 120 months.   (Docs. 82, 93 & 108).   Further, in doing so, the district court noted that the "sentence would be the same regardless of any ruling that the

---

[13]   As a part of her ground two, the defendant claims that defense counsel did not force the government to prove the loss attributed to the defendant by at least a preponderance of the evidence.  (Doc. 100, pgs. 3 & 11-15).  A review of the record shows the government presented testimony and exhibits at the defendant's sentencing hearing to establish the loss amount being attributed to the defendant.  (Doc. 108, pgs. 9-75 and Government Exhibits A-1 through A-7).

Court made on the objections." (Doc. 108, pg. 99). The defendant has failed to establish her allegation that counsel's representation was deficient or that counsel's deficient performance prejudiced her.[14] The record clearly shows the opposite. Therefore, the defendant's motion should be denied on these grounds.

**B.    Defendant's Ground Three – District Court erred in its application of enhancements**

In her ground three, the defendant alleges that "her total term of incarceration was reached by cumulative points for enhancements based on facts not stipulated to in the plea agreement, not proven before the court and not admitted to by her in any form." (Doc. 100, pgs. 4 & 15-16). In support of this ground, the defendant cites the district court's inclusion of enhancements for role of organizer, sophisticated means, and obstruction of justice.[15] (Doc. 100, pgs. 4 & 15-16). The government submits that there was ample evidence in the record and presented during the defendant's sentencing hearings to support said enhancements, and "stipulation" to such enhancements in the defendant's plea agreement was not required. Nonetheless, application of these enhancements was ripe for direct appeal; however, it was not raised by defendant and is now procedurally barred as the defendant has not shown cause for failing to raise this issue previously. Additionally, the defendant has not shown, nor can she show, any

---

[14]  Further, it should be noted that there "is an expectation of reasonableness when a district court imposes a sentence within the applicable guidelines range." *United States v. Wayerski*, 624 F.3d 1342, 1353 (11th Cir. 2010); *accord United States v. Dean*, 635 F.3d 1200, 1209 (11th Cir. 2011); *see also*, *United States v. Mozie*, 2014 WL 2118745 (11th Cir. May 22, 2014).

[15]  As discussed above, defense counsel objected to the role and obstruction of justice enhancement's applied. (Docs. 74 & 90; Doc. 108, pgs. 11-13, 41-44, 71-73). The sophisticated means enhancement was addressed at the defendant's sentencing; however, defense counsel announced that the defendant was waiving any objection to it. (Doc. 108, pgs. 3-4, 66). The defendant was present when this announcement was made by defense counsel. (Docs. 90 & 108).

prejudice by the district court's application of these enhancements.  Again, the defendant was sentenced to almost one half of her advisory guideline range, and in doing so, the district court announced it would have imposed the same sentence regardless of its ruling on defense counsel's objections.

### C.      Defendant's Ground Four – Reasonableness of district court's sentence and defense counsel was allegedly ineffective for not obtaining a lower sentence.

Defendant's fourth ground concerns the reasonableness of the District Court's sentence, but the defendant has also couched it as an ineffectiveness of counsel claim. (Doc. 100, pgs. 4 & 16).  Because this claim was not raised on direct appeal, it too is procedurally barred, but to the extent the claim is being raised as an effectiveness of counsel claim, it should also be barred because the defendant has not carried her burden on either *Strickland* prong.

In her ground four, the defendant alleges that the district court failed to apply the "Parsimony Principle" under Title 18, United States Code, Section 3553(a)(2), and did not impose a reasonable sentence.  (Doc. 100).  This issue was ripe for direct appeal; however, it was not raised by defendant and is now procedurally barred as she has not shown cause for failing to raise this issue previously.  Further, the defendant cannot show any prejudice resulting from not raising it.

Even assuming, *arguendo*, defendant's assertions are properly before this Court, the defendant's claim is without merit.  The record of proceedings from the sentencing hearing held on January 23, 2013, directly contradict the defendant's claim, that is, the district court stated the following:

> So keeping all of this in mind, I do, along with having considered Title 18, United States Code, 3553(a), as well as the advisory nature of the guidelines and how they were created in this particular crime, I do determine the sentence is reasonable, and a greater sentence is not necessary to comply with the statutorily defined purpose of sentencing.
>
> I do find the sentence meets the general goals of punishment and acts as a general and specific deterrent hopefully to others who might consider similar criminal conduct.

(Doc. 108, pgs. 97-98).   Further, the defendant received a sentence well below the guideline imprisonment range of 235 to 293 months.   Therefore, the sentence of 120 months imprisonment she received was not greater than necessary as she has alleged in her claim.   The defendant's claim is frivolous and is based solely upon conclusory allegations unsupported by specific facts.   To the extent the defendant claims her attorney did not argue for a reasonable sentence on her behalf, the defendant wholly fails to recognize defense counsel's seventeen page sentencing memorandum submitted on her behalf.   (Doc. 85).   Based upon the aforementioned, the defendant's claim should be denied on this ground as well.

## IV.    STATEMENT REGARDING EVIDENTIARY HEARING

A court must conduct an evidentiary hearing on a motion under § 2255 "unless the motion and files and records conclusively show that the prisoner is entitled to no relief."  Title, 28, United States Code, Section 2255(b).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.   *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   A defendant must support his/her allegations with, at the very least, a proffer of some credible, supporting evidence in order to be entitled to such a hearing.   *See, e.g.,*

*Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002)).  The defendant carries the burden of establishing the need for an evidentiary hearing.  *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983).

Further, when a court "can conceive of a reasonable motivation for counsel's actions," it should "deny a claim of ineffective assistance without an evidentiary hearing." *Gordon v. United States*, 518 F.3d 1291, 1302 (11th Cir. 2008).  The defendant has not met her burden and the record conclusively shows that defendant's claims are without merit.  Therefore, any request for an evidentiary hearing should be denied.

**WHEREFORE**, the United States of America asks this Court to deny the defendant's motion without an evidentiary hearing.

Respectfully submitted,

PAMELA C. MARSH
United States Attorney

*/s/ Tiffany H. Eggers*
TIFFANY H. EGGERS
Assistant United States Attorney
Florida Bar #193968
21 East Garden Street
Pensacola, Florida  32502
(850) 444-4000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this motion is being filed via the Court's electronic system on this 9th day of June, 2014, and that a true and correct copy of the foregoing will be placed in the U.S. Mail to Lonett Rochell Williams #21707-017, F.C.I. Victorville Medium II Satellite Camp, P.O. Box 5300, Adelanto, CA 92301.

/s/ Tiffany H. Eggers
TIFFANY H. EGGERS
Assistant United States Attorney