IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


UNITED STATES OF AMERICA

vs.                                        Case Nos.:  3:12cr70/LAC/EMT
                                                       3:14cv55/LAC/EMT

LONETT R. WILLIAMS

---

## <u>ORDER, REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 100).   The Government filed a response (ECF No. 111), and Defendant filed a reply (ECF No. 114).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.



Case Nos.: 3:12cr70/LAC/EMT; 3:14cv55/LAC/EMT

PROCEDURAL BACKGROUND[1]

Defendant Lonett Williams was arrested pursuant to a criminal complaint at the United States Courthouse following her testimony at the trial of her son Raysean Richardson on September 7, 2012.   On September 26, 2012, Defendant was charged in an eight-count indictment with one count of conspiracy to commit mail fraud, six counts of mail fraud, and one count of conspiracy to commit money laundering (ECF No. 18).   The charges stemmed from Defendant's involvement in the submission of fraudulent loan applications to fund purchases of real property in Florida, Georgia, Maryland, Louisiana, Texas, and California.   The loan applications contained false statements including false names and social security numbers for the purchasers, overstatements as to the borrowers' income and assets, false assurances that the earnest money deposits or cash to close were not borrowed, false statements that the residences would be used as primary residences by the borrowers, and intentional omissions of the purported borrowers' other outstanding mortgage loans.   Additionally, the loan applications were supported by fraudulent documentation such as false pay stubs, false W-2's, false verifications of

---

[1] More detailed facts are set forth in the Presentence Investigation Report ("PSR") and the Government's response to Defendant's motion.

Case Nos.: 3:12cr70/LAC/EMT; 3:14cv55/LAC/EMT

employment, false verifications of rent, and false documentation concerning the borrowers' credit (*see* ECF No. 65, PSR).    Following closings on the properties, loan proceeds were transferred into bank accounts controlled by Defendant and others, or into bank accounts titled in the names of Defendant and others, with portions transferred into bank accounts held by borrowers.    Defendant also used a false name, social security number, and driver's license to purchase some property. Defendant's son, Raysean Richardson, was involved in the scheme, and Defendant testified at his trial that she had submitted false statements and false documents to lenders so that Richardson could obtain loans.    The PSR identified a total of thirty-seven properties that were part of this scheme, and calculated that Defendant's company, RMT Associates, Inc., received a total of $4,562,887,86 as a result of the fraud.

Appointed counsel Shelley Guy Reynolds filed a notice of appearance on September 28, 2012 (ECF No. 28).    Counsel subsequently filed numerous motions including a motion for transcription of the detention hearing, a motion to suppress statements made during Ms. Williams' testimony at her son's trial because she had not been properly advised of her right to remain silent, a motion to suppress items seized during a search of her purse at the time of her arrest, and a motion to dismiss

the indictment because of the Government's "implied grant of immunity" during her testimony at her son's trial (ECF Nos. 30, 36, 39, 40).   The Government responded to the motion to suppress, and the court set the matter for a hearing on October 29, 2012 (ECF Nos. 43, 45).   It also scheduled a hearing for October 23, 2012, on Defendant's motion to continue her trial, filed October 15, 2012 (ECF Nos. 38, 47). Counsel contended in the motion to continue that due to the volume and lack of organization of the evidence in this case, and as a sole practitioner whose client was incarcerated and unable to provide meaningful assistance in the sorting of documents, she would be unable to provide effective representation for trial in the allotted time (ECF No. 38).   Five days after scheduling the latter hearing, the court set a change of plea hearing for October 23, 2012, which was later changed to the following day (ECF Nos. 48, 49).

Defendant entered a guilty plea pursuant to a written factual basis, plea agreement, and supplement on October 24, 2012 (ECF Nos. 51–53, 106).   The brief plea proceeding was unremarkable, as Defendant indicated she understood her rights and the possible sentences she faced, and she acknowledged that she had committed the acts as alleged by the Government and had reviewed the plea agreement with counsel and was satisfied with counsel's representation of her (ECF No. 106).   All

pending motions were withdrawn at the time of the plea (*see* ECF Nos. 55–58, ECF No. 106 at 16).

The Final PSR determined that Defendant's Total Offense Level was 38 (ECF No. 65).    The calculation included an initial base level of 7; a 20-level increase due to the loss amount; a 4-level increase due to her leadership role in the offenses; five, 2-level increases due to the number of victims, the use of sophisticated means, the amount of profits Defendant obtained, obstruction of justice, and the 18 U.S.C. § 1956 conviction; and a 3-level decrease for acceptance of responsibility (ECF No. 65, PSR ¶¶ 48–57).    Defendant's criminal history category was I.    The applicable guidelines range was 235 to 293 months, but due to statutory maximum sentences of 20 years on all counts, the applicable guidelines range became 235 to 240 months (ECF No. 65, PSR ¶¶ 100-101).

Prior to sentencing, defense counsel filed a response to the PSR raising eleven objections.    She also filed a seventeen-page sentencing memorandum in which she argued for a below-guidelines and reasonable sentence (ECF Nos. 74, 85). Sentencing began on January 22, 2013, at which time the court addressed counsel's motion to continue the sentencing hearing (ECF No. 107 at 2).    The court declined to grant a lengthy continuance but indicated that it would allow counsel until the

Case Nos.: 3:12cr70/LAC/EMT; 3:14cv55/LAC/EMT

following morning to prepare, after hearing the testimony of the witnesses that had appeared that day.

Philip Greeson, a Special Agent with the Internal Revenue Service, indicated that his investigation revealed 37 properties associated with Defendant (ECF No. 107 at 9). He had prepared summary exhibits identifying the loan amounts and other relevant information which were introduced into evidence (ECF No. 107 at 9–15).

Robert Schoppe, Assistant Director of the Strategic Operations Department of the Federal Deposit Insurance Corporation also testified (ECF No. 107 at 15). Schoppe testified that he was the receiver-in-charge for Washington Mutual ("WAMU") when the bank failed and was assumed by JPMorgan Chase. WAMU was the original lender for twelve of the thirty-seven properties. The Government introduced a Purchase and Assumption Agreement for the FDIC and JPMorgan Chase (ECF No. 107 at 21). The document identified "criminal restitution orders issued in favor of the failed bank" as assets not purchased (*id*. at 23), and provided that JPMorgan Chase would continue to hold all the records for WAMU-originated loans and would cooperate in providing them as needed (*id*. at 24–26). JPMorgan Chase assumed all of WAMU's loans, in bulk, and subsequently assumed the risk of

loss on the loans (*id*. at 29–30), although the witness could not say whether JPMorgan made money or lost money on any of the loans identified by defense counsel.

The hearing resumed the following morning (ECF No. 108).   FBI Special Agent LeBlanc testified about the nature and scope of the conspiracy to support various enhancements (*id*. at 8–35).    And Greeson gave additional testimony about the kickbacks received by various participants (ECF No. 108 at 36–40).

The court overruled the defense objection to the leadership role enhancement (ECF No. 108 at 44), as well as objections to enhancements based on the number of victims (*id*. at 66), Defendant's conviction under § 1956 (*id.* at 71), and obstruction (*id.* at 73).    Defendant withdrew her objection to the sophisticated means and gross receipts adjustment (*id* at 66–67).    The only objection with respect to restitution, initially, was to a single individual, Ramona Jones, and this amount was removed from the total restitution amount (ECF No. 108 at 75–77).

Defense counsel argued that a downward departure was warranted because mortgage companies encouraged fraudulent loans that they knew were going to fail (ECF No. 108 at 81, citing United States v. Dailey, 24 F. 3d 1323 (11th Cir. 1994)). In response the Government noted that Defendant's case was distinguishable from

the cases in which lenders could be faulted due to their failure to do due diligence. Rather, the loan applications herein contained bank statements and fictitious W-2 forms, and Defendant even persuaded her brother to allow her to file an amended tax return in his behalf to increase his income.   The Government further noted that the fraud included multiple people, including a long list of people Defendant taught how to commit mortgage fraud, that the fraud spanned multiple states, and that executing the scheme took a great deal of skill (ECF No. 108 at 93–94).

The court determined that the PSR was accurate and that the sentencing guidelines had been properly calculated at 38 with a criminal history category of I (ECF Nos. 108 at 79, 96).   Despite the applicable guideline range of 235 to 240 months, it sentenced Defendant to a term of 120 months in prison (ECF No. 97). The court noted that the sentence was significantly below the guidelines because "the guidelines really don't properly track the nature of the crime, the seriousness of the crime and that has too great a reliance on the amount rather than the acts that were committed" (*id*.).   The court also noted that it had considered the 3553(a) factors and the advisory nature of the guidelines, and that it determined that "the sentence is reasonable, and a greater sentence is not necessary to comply with the statutorily defined purpose of sentencing."   Similarly, it stated its belief that the

Case Nos.: 3:12cr70/LAC/EMT; 3:14cv55/LAC/EMT

sentence "meets the general goals of punishment and acts as a general and specific deterrent hopefully to others who might consider similar criminal conduct" (ECF No. 108 at 98).   The court concluded after pronouncing sentencing by stating, "And I would state for the record that this sentence would be the same regardless of any ruling that the court made on the objections." (ECF No. 108 at 99).   On March 13, 2013, the court entered an amended judgment imposing restitution in the amount of $13,817,163.17 (ECF No. 97).

Defendant did not appeal, but timely filed her motion to vacate on January 28, 2014, pursuant to the prison mailbox rule (ECF No. 100).   She raises two claims that counsel's performance was constitutionally deficient, and two due process claims regarding sentencing which also incorporate ineffective assistance of counsel claims.   The Government opposes the motion.

## ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded

its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014); Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   Nyhuis, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of

whether a particular claim has been previously raised.   <u>Sanders v. United States</u>,

373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual

allegations . . . or supported by different legal arguments . . . or couched in different

language . . . or vary in immaterial respects").

Defendant did not file a direct appeal in this case.   However, a motion to

vacate under section 2255 is not a substitute for direct appeal, and issues which could

have been raised on direct appeal are generally not actionable in a section 2255

motion and will be considered procedurally barred.   <u>Lynn</u>, 365 F.3d at 1234–35;

<u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998); <u>McKay v. United States</u>, 657

F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when

its merits can be reviewed without further factual development."   <u>Lynn</u>, 365 F.3d

at 1232 n.14 (quoting <u>Mills</u>, 36 F.3d at 1055).   Absent a showing that the ground

of error was unavailable on direct appeal, a court may not consider the ground in a

section 2255 motion unless the defendant establishes (1) cause for not raising the

ground on direct appeal, and (2) actual prejudice resulting from the alleged error,

that is, alternatively, that she is "actually innocent."   <u>Lynn</u>, 365 F.3d at 1234;

<u>Bousley</u>, 523 U.S. at 622 (citations omitted).   To show cause for procedural default,

a defendant must show that "some objective factor external to the defense prevented

[defendant] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." <u>Lynn</u>, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause. *See* <u>Nyhuis</u>, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   <u>Massaro v. United States</u>, 538 U.S. 500, 503 (2003); *see also* <u>United States v. Franklin</u>, 694 F.3d 1, 8 (11th Cir. 2012).   In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that she was prejudiced by this inadequacy. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984); <u>Williams v. Taylor</u>, 529 U.S. 362, 390 (2000); <u>Darden v. United States</u>, 708 F.3d 1225, 1228 (11th Cir. 2013). <u>Strickland</u>'s two part test also applies to guilty pleas, although Defendant does not appear to contest any aspect of her guilty plea in this case.   <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1384 (2012) (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985)).   In applying <u>Strickland</u>, the court may dispose of an ineffective assistance claim if a defendant fails to carry her burden on either of the two prongs.   <u>Strickland</u>, 466

U.S. at 697; <u>Brown v. United States</u>, 720 F.3d 1316, 1326 (11th Cir. 2013); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." <u>Strickland</u>, 466 U.S. at 688; *see also* <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." <u>Hammond v. Hall</u>, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting <u>Strickland</u>, 466 U.S. at 689); *see also* <u>Chandler v. United States</u>, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. <u>Strickland</u>, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." <u>Gordon</u>

v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." Chandler, 218 F.3d at 1314. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or

in the case of alleged sentencing errors, which is what is alleged in this case, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.   Glover v. United States, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for her contentions regarding counsel's performance.   Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.   *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing* Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (*citing* Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of her constitutional rights based on her attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped her case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

Case Nos.: 3:12cr70/LAC/EMT; 3:14cv55/LAC/EMT

Finally, an evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015); Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   Gordon, 518 F.3d at 1301 (citing Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true would prove she is entitled to relief.   *See* Hernandez v. United States, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See* Winthrop−Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   Lynn, 365 F.3d at 1239.   And disputes involving purely legal issues can be resolved by the court without a hearing.

Claims One and Two

In her first and second grounds for relief, Defendant directly assails the performance of her attorney.   In Ground One, she asserts that counsel "underrepresented" her by failing to adequately research the law and investigate and otherwise prepare a defense.   She maintains that counsel failed to familiarize herself as to the intricacies of the case, and generally failed to investigate or challenge and mitigate all sentencing factors which would have impacted her sentence (ECF No. 100 at 3).   This assertion is totally lacking in factual support and, even taken with the arguments raised in Defendant's reply, does not meet Defendant's burden for showing that counsel was constitutionally ineffective under Strickland.

In Ground Two, she asserts that counsel gave her "incompetent, deficient and careless advice" regarding challenging the amount of loss and the methods in which loss was determined and failed to hold the Government to its burden to establish the loss amounts.   Defendant argues that her misrepresentations to the lenders were not the sole cause of the losses, and that this should have been taken into account at sentencing as contemplated by U.S.S.G. § 2B1.1(b)(1).   As noted above, the record reflects that despite overruling counsel's myriad objections, the court sentenced Defendant to half of the applicable guidelines range (ECF No. 82,

Case Nos.: 3:12cr70/LAC/EMT; 3:14cv55/LAC/EMT

93, 108).    Furthermore, in so doing, the court noted that its "sentence would be the same regardless of any ruling that the court made on the objections" (ECF No. 108 at 99).    Thus, there is no prejudice.    What is more, because the record appears to reflect the court's acknowledgment of the "extrinsic factors" argued by Defendant in her reply that might have impacted the loss amount, she has likewise failed to establish ineffective assistance, as required by Strickland.

Claim Three

Defendant's third ground for relief is that the district court erred in its application of sentencing enhancements.    Defendant specifically contends that there was error because "her total term of incarceration was reached by cumulative points for enhancements based on facts not stipulated to in the plea agreement, not proven before the court, and not admitted to by her in any form" (ECF No. 100 at 4, 15–16).    A claim of district court error, which was available on appeal, is procedurally barred.    Even absent a procedural bar, if Defendant's claims are considered under the umbrella of ineffective assistance of counsel, the claims are bereft of merit.

Defendant asserts that the enhancements for her role in the offense, sophisticated means, and obstruction of justice, were improperly applied to her case.

Case Nos.: 3:12cr70/LAC/EMT; 3:14cv55/LAC/EMT

To the extent Defendant contends that stipulation to the application of these enhancements in the plea agreement was required, her understanding of the law is mistaken.    Furthermore, review of the record reveals that the defense objections to the enhancements for role in the offense and obstruction of justice were addressed at sentencing and the propriety of each adjustment was established by the required preponderance of the evidence (ECF No. 108 at 11–13, 41–44, 71–73; *see also* ECF Nos. 74, 90); <u>United States v. Ford</u>, 784 F.3d 1386 (11th Cir. 2015).    The sophisticated means enhancement was mentioned at Defendant's sentencing, but counsel advised the court that Defendant was waiving her objection to this adjustment (ECF No. 108 at 3–4, 66).    In any event, the adjustment was adequately supported by the facts set forth in the PSR (*see* ECF No. 65, PSR ¶ 48).    Defendant has not shown any error that would support collateral relief, particularly in light of the court's comments with respect to the below-guidelines sentence it imposed.

> ### Ground Four

In Defendant's final claim for relief she contends that she was denied due process by the court's failure to apply the "parsimony principle," and that counsel was constitutionally ineffective for her failure "to suggest a more reasonable

sentence or [that] a departure from the guidelines should be imposed" (ECF No. 100 at 19).

Defendant's reference to the "parsimony principle" appears to refer to the Eleventh Circuit's opinion in United States v. Irey, 612 F.3d 1160 (11th Cir. 2010). Therein, the majority notes that concurring Judge Tjoflat refers to the § 3553(a) requirement that a sentence be adequate but not excessive for the purposes set out in § 3553(a)(2), as "the parsimony principle" or "the parsimony requirement." Irey, 612 F.3d at 1196–97 (citing Separate Op. of Tjoflat, J., at 3509 & n.21, 3509, 3511, 3513, 3516, 3520, 3527–28, 3530, 3532, 3539 n.91, 3544 n.100 (page references as noted in original opinion)).   Defendant argues that counsel did not use any offense mitigation to suggest that a more reasonable sentence or departure from the guidelines be imposed, and that she made no mitigation alternative report available to the court outlining reasons that she should not be subject to the guideline range calculated by the Probation Officer.   Again, Defendant's argument ignores the fact that her sentence was merely half of the applicable guidelines range, the court's specific reference to § 3553, and its statement that the sentence would have been the same regardless of its ruling on the defense objections.   Defendant has not shown that counsel was constitutionally ineffective, and she is not entitled to relief.

Case Nos.: 3:12cr70/LAC/EMT; 3:14cv55/LAC/EMT

Defendant's Motion to Amend

On December 12, 2016, the clerk received Defendant's "Motion Requesting Leave of the Court to Amend Pending 28 U.S.C. Section 2255" (ECF No. 122). Defendant states therein that she "has been reading and acquiring some knowledge of the law and would, therefore, like to make changes accordingly" (*id.* at 1). Defendant did not submit her proposed amended motion in conjunction with her request to amend, and as such the motion is due to be denied on that basis alone.   In any event, Defendant has not shown good cause for her request for leave to file an amended motion at this juncture, and her request will be denied.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in her motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has she shown that an evidentiary hearing is warranted.   Therefore Defendant's § 2255 motion should be denied in its entirety.

**Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that the district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant, and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED:**

Defendant's motion for leave to amend pending § 2255 motion (ECF No. 122) is **DENIED**.

And it is respectfully **RECOMMENDED** that:

1.   The motion to vacate, set aside, or correct sentence (ECF No. 100) be

**DENIED**.

2.   A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 21ˢᵗ day of December 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 3:12cr70/LAC/EMT; 3:14cv55/LAC/EMT